Argued June 1, affirmed September 11, 1970

# BYRD, *Appellant, v.* LORD BROTHERS CONTRACTORS, INC., *Respondent.*

473 P2d 1018

*James G. Breathouwer*, Portland, argued the cause for appellant. With him on the briefs were George M. Joseph, and Seitz, Whipple, Bemis & Breathouwer, Portland.

*Kenneth D. Renner*, Portland, argued the cause for respondent. With him on the brief were Wayne A. Williamson, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, DENECKE, HOLMAN, HOWELL and SCHWAB, Justices.

HOLMAN, J.

Plaintiff brought an action to recover damages for personal injuries occasioned when he was hit by a piece of concrete. Plaintiff appealed from a judgment entered on a jury verdict for defendant. The only issues relate to the admissibility of evidence.

At about ten o'clock in the evening, plaintiff was operating his motor vehicle on Lombard Street under the 33rd Street overpass in the city of Portland, when a piece of concrete came through his windshield and injured him. Defendant was engaged in the remodel-

ing of the overpass, which involved removing a con-crete walk and railing along one side. A bulkhead had been constructed for the purpose of confining debris. The testimony was in dispute as to its efficiency. Concrete had previously been broken away below the bulkhead for the purpose of inserting beams for its support. No work was being done at the time of the accident, but work had been performed that day. The overpass was open to pedestrians and vehicular traffic at the time of the accident. There was no direct evi-dence concerning the cause of the falling concrete.

Defendant introduced evidence, to which plaintiff objected, that at approximately the time of the ac-cident, four or five boys around junior high school age were seen running west on Columbia Boulevard at its intersection with 27th Street. The intersection where the boys were seen is six blocks west and one block north of where the accident occurred. However, the north end of the overpass is approximately at the inter-section of 33rd Street and Columbia Boulevard, six blocks from where the boys were seen. There was no other evidence to connect the boys to the chunk of con-crete which struck plaintiff.

The problem is one of relevancy. The conclusion sought to be drawn is that the boys threw the con-crete from the overpass. The fact from which this conclusion is to be inferred is that they were seen six blocks away running in a direction away from the north end of the overpass at about the time of the accident. The question is whether this fact has suf-ficient probative bearing on the issue to make it rele-vant and thus admissible. McCormick says as follows:

"What is the standard of relevance or probative quality which evidence must meet if it is to be

admitted? We have said that it must 'tend to establish' the inference for which it is offered. How strong must this tendency be? Some courts have announced tests, variously phrased, which seem to require that the evidence offered must render the inference for which it is offered more probable than the other possible inferences or hypotheses, that is, the chances must appear to preponderate that the inference claimed is the true one. It is believed, however, that while this might be a reasonable standard by which to judge the sufficiency of all of a party's proof to enable him to get to the jury on the issue, it makes too heavy a demand upon a given item of proof at the admissibility stage, when we are gathering our bits of information piece by piece. And, in fact, much circumstantial evidence is commonly received which does not meet so stringent a test * * *. It is believed that a more modest standard would better reflect the actual practice of the courts, and that the most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?* * * *." (footnotes omitted; emphasis his.) McCormick, Evidence 317-18, § 152 (1954).

■ The jury, of course, realized that there was the possibility that the concrete was thrown from the overpass by someone, because the public had access to the overpass. From the jury's knowledge of everyday life, it could have legitimately concluded that boys are inclined to run away from the scene of a wrong. From the same knowledge, they could believe that children are more likely to throw things from an overpass than are adults. Under these circumstances, we cannot say that the admitted testimony had no probative value.

Admittedly, the boys could have come from numerous other places than the overpass and could have been running for any one of the various reasons that

boys run. The relation between the boys and the over-pass six blocks away is an attenuated one, but we believe that, after the introduction of the evidence in question, there was a greater possibility that the concrete was thrown from the overpass than would have so appeared in the absence of such evidence. Had the boys been seen running from the end of the overpass, no one would have any difficulty in concluding that the evidence was highly relevant. When the same thing occurs six blocks away, its probative value is very greatly lessened. However, we cannot say it has none. We do not mean that it was probable that the boys threw the concrete or that the evidence would justify the submission of a case to the jury if they were being sued for having caused the injury. Wigmore has the following to say:

> "On the other hand, the judges constantly find it necessary to warn us that their function, in determining Relevancy, is not that of final arbiters, but merely of preliminary testers, *i.e.*, that the evidentiary fact offered does not need to have strong, full, superlative, probative value, *does not need to involve demonstration* or to produce persuasion by its sole and intrinsic force, but merely to be *worth consideration by the jury*. It is for the jury to give it the appropriate weight in effecting persuasion. The rule of law which the judge employs is concerned merely with admitting the fact through the evidentiary portal. The judge thus warns the opponent of the evidence that he is not entitled to complain of its lack of absolute demonstrative power; a mere capacity to help in demonstration is enough for its admission:" (footnote omitted; emphasis his.) 1 Wigmore on Evidence 411, § 29 (3d ed 1940).

■ The plaintiff had the burden of persuading the jury that the defendant was negligent. The defendant is entitled to make this burden as heavy as possible by

calling to the jury's attention any fact which would raise a not completely unreasonable *possibility* that the untoward occurrence happened in a manner inconsistent with its negligence.

■ When the offered testimony gets to the outer fringes of relevancy, courts allow the trial judge a certain amount of leeway in evaluating its admissibility. 1 Conrad, Modern Trial Evidence 53, § 37 (1956) expresses it this way:

"* * * Before evidence can be excluded on the ground of irrelevancy, it is essential that it appear so beyond doubt. If the question is doubtful, the settled rule is that the evidence should go to the jury for evaluation by it * * *." (footnote omitted.)

■ Plaintiff also contends that the trial court erred in admitting the following testimony over objection because it called for a conclusion which was the ultimate question to be decided by the jury:

"Q. State whether or not, Mr. Percival, there was any way for debris to come down, and if so, explain how it could come down.

"* * * * * *

"A. The only way it would have to come over the top of the bulkhead."

Even if the evidence was conclusory and therefore not admissible, no prejudicial error was involved. Substantially, the same evidence came in without objection from another witness.

"Q. Were there in fact any breaks in that bulkhead or holes in it that would have permitted debris to pass through?

"A. No."

The judgment of the trial court is affirmed.

SCHWAB, pro tempore J., dissenting.

I cannot concur with that portion of the majority opinion which holds that evidence that a group of boys was seen seven blocks away running in a direction away from the north end of the overpass, without anything further to connect them to the incident in question, was relevant and thus admissible.

The only conceivable purpose of this testimony was to influence the jury to believe that the piece of concrete which injured the plaintiff did not fall as a result of negligence on the part of the defendant, but, rather, was thrown by one of the boys seen running.

The following excerpts from the appellant's brief cogently demonstrate the irrelevance of this evidence for the purpose for which it was introduced:

"What 'light' does an observation made seven blocks away throw on the issue of how a piece of concrete fell from the overpass? There was *no* evidence to connect one event with the other. Without some connective tissue between them, there was no more 'rational relationship' than there was between plaintiff's accident and any other person or thing that might co-incidentally have been observed somewhere in the general area. There is nothing in the received evidence which according to the common course of events made probable that the 'running boys' had thrown a rock thru plaintiff's windshield * * *.

"* * * * * *.

"A close analog is contained in the negligence cases where it is sought to introduce evidence of defendant's speed at a point removed from the scene. The objectionable features of that sort of evidence are that it has a strong tendency to distract and mislead and, also, it is not proof of the only issue it could bear on. *Ramp v. Osborne*, 115 Or 672, 677, 239 P 112 (1925). Where the connec-

tion between the speed, the distance and the tortious event properly can come in. *Yates v. Stading*, 219 Or 464, 475, 347 P2d 839 (1959). Only if there is other connecting evidence is it properly admissible. *May v. Mack*, 225 Or 278, 356 P2d 1060 (1960); *Shoopman v. Long*, 252 Or 341, 449 P2d 439 (1969). In the instant case, the connecting evidence is non-existent. The reason for exclusion, moreover, is even stronger. In the speed cases the person about whom remote evidence of conduct is sought to be introduced is himself 'connected' with the accident. The 'running boys' are utterly unconnected. Evidence of their conduct should not have been received."

The majority opinion concedes that if the action had been against the boys for throwing the piece of concrete, the evidence offered would not have justified the submission of the case to the jury.

What the majority opinion therefore holds is that evidence of the identity of a tortfeasor which is not sufficient to create a jury question as to claimant's right to damages is sufficient proof of identity to defeat the claimant's right to damages.

For the foregoing reasons I respectfully dissent.

SLOAN and HOWELL, JJ., join in this dissent.